# <u>EXHIBIT A</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

NARE OGANESYAN,

                              Plaintiff,

        - against –

TIFFANY AND COMPANY, MARIE GORDON
and NATALIE EL-QAOUD,

                              Defendants.

---

Index No.:
Date Index No. Purchased:

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS:**

        YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy
of your answer, or if the complaint is not served with this summons, to serve a notice of appearance,
on Plaintiff within 20 days after the service of this summons, exclusive of the day of service (or within
30 days after the service is complete if this summons is not personally delivered to you within the
State of New York); and in case of your failure to appear or answer, judgment will be taken against
you by default for the relief demanded in the complaint.

        Plaintiff designates NEW YORK COUNTY as the place of trial pursuant to CPLR § 503 on
the grounds of Defendants' residence.

Dated: May 9, 2023

                              **SHEGERIAN & ASSOCIATES**

                              By:    *Olivia Clancy*

                              Olivia M. Clancy, Esq.
                              90 Broad Street, Suite 804
                              New York, New York 10004
                              Tel.: (212) 257-8883 Fax:
                              (212) 804-7299
                              oclancy@shegerianlaw.com
                              *Attorneys for Plaintiff*
                              **NARE OGANESYAN**

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| NARE OGANESYAN,<br><br>     Plaintiff,<br><br>- against –<br><br>TIFFANY AND COMPANY, MARIE GORDON<br>and NATALIE EL-QAOUD,<br><br>     Defendants. | Index No.:<br><br>**COMPLAINT AND DEMAND**<br>**FOR JURY TRIAL** |

Plaintiff NARE OGANESYAN ("Plaintiff"), by and through her attorneys, SHEGERIAN &
ASSOCIATES, as and for her Complaint against Defendants TIFFANY AND COMPANY
("Defendant" or "T&C"), MARIE GORDON ("GORDON"), and NATALIE EL-QAOUD ("EL-
QAOUD") states and alleges on information and belief as follows:

## JURISDICTION AND VENUE

1.   Jurisdiction is proper because Defendants conduct business in Manhattan, New York
and the acts and/or omissions giving rise to the causes of action alleged herein occurred in New York.

2.   Venue is proper in New York County and this Court under C.P.L.R. § 503(c) because
Defendant resides in this county.

## PRELIMINARY STATEMENT

3. This action is brought by Plaintiff against Defendants for claims of disability discrimination,
failure to accommodate, failure to engage in cooperative dialogue, failure to provide reasonable
accommodation, hostile work environment, retaliation and aiding and abetting under the New York
Executive Law § 296, *et seq.* ("NYSHRL") and the N.Y.C. Admin. Code § 8-101, *et seq.*
("NYCHRL") resulting in her wrongful termination. Plaintiff brings this action against the Defendants
for economic, non-economic, compensatory and punitive damages, pre-judgment interest, and costs
and reasonable attorneys' fees.

2

**PARTIES**

4.      *Plaintiff*: Plaintiff NARE OGANESYAN is, and at all times mentioned in this Complaint, was a resident of the State of New York.

5.      *Defendants*: Defendant TIFFANY & CO. is, and at all times mentioned in this Complaint, was authorized to operate by the State of New York and the United States Government and authorized and qualified to do business in the County of New York. Defendant's place of business, where the following causes of action took place, was located at 20 Hudson Yards, New York, New York 10001.

6.      Defendant GORDON is, and at all times mentioned in this Complaint, was a resident of the State of New York, was Plaintiff's direct supervisor and was employed at Defendant T&C's place of business located at 20 Hudson Yards, Suite RU 121, New York, New York 10001.

7.      Defendant EL-QAOUD is, and at all times mentioned in this Complaint, was a resident of the State of New York and was employed by Defendant T&C in its Human Resources ("HR") department located at 200 Fifth Avenue, New York, New York 10010.

8.      *Relationship of Defendants*: Defendants compelled, coerced, ratified, aided, and/or abetted the retaliation alleged in this Complaint, which conduct is prohibited under the New York State Human Rights Law and New York City Human Rights Law. All Defendants were responsible for the events and damages alleged herein, including on the following bases: (a) Defendants committed the acts alleged; (b) at all relevant times, one or more of the Defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, those existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality

3

and separateness between or among those Defendants has ceased, and Defendants are the alter egos of one another. Defendants exercised dominion and control over one another to such an extent that any individuality or separateness of Defendants T&C, is not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of Defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

9. Defendant T&C, directly and indirectly employed Plaintiff as defined in the New York State Human Rights Law and the New York City Administrative Code.

10. In addition, all Defendants compelled, coerced, ratified, aided, and abetted the discrimination and failure to accommodate which is prohibited under the New York State Human Rights Law and the New York City Human Rights Law.

11. At all relevant times mentioned herein, all Defendants acted as agents of all other Defendants in committing the acts alleged herein.

## **FACTUAL BACKGROUND**

12. *Plaintiff's hiring*: On or about November 6, 2014, Plaintiff was interviewed and hired by her Manager, Shawn Roberts to work in the role of Sales Professional in Glendale, California. In or about August 2016, she was promoted to Operations Coordinator for the Glendale location. In or about August 2017, she was again promoted to Assistant Store Manager in Glendale. On or about November 21, 2019, she was promoted to Store Manager at the Hudson Yards store location in New York, New York. She was subject to annual performance reviews and received "Meets expectations" and "Exceeds expectations" on her reviews. After being hired as a Store Manager in New York, she began earning an annual salary of approximately $93,000 plus bonuses.

4

13. *Plaintiff's job performance:* Plaintiff was a diligent, hard-working employee for approximately eight (8) years and was subject to satisfactory performance reviews before being terminated effective October 2, 2022.

14. *Defendants' adverse employment actions and behavior*: In New York, Plaintiff's direct boss was Director, Defendant GORDON.

15. Throughout 2021, Plaintiff expressed to Defendant GORDON that she desired to relocate back to Glendale, California in the future. In or about August 2021, she became aware Defendant informed Human Resources ("HR") that Plaintiff aimed to move back to California. HR asked Defendant if Plaintiff had a set date to relocate, and Defendant said no.

16. Defendant then notified Plaintiff that HR would be posting her job to replace her as the Store Manager at the Hudson Yards store location. She was extremely shocked, confused and very upset. Plaintiff told HR that she did not intend to resign from her current position and would like to remain employed.

17. In or about November 2021, Plaintiff advised Defendant GORDON that she would like to begin applying for a Store Director position in Glendale, California. Defendant responded that she would not support Plaintiff seeking that new role.

18. Defendant apprised Plaintiff that she had conversations with HR about Plaintiff's development. On or about November 30, 2021, Plaintiff applied to the available Store Director position for the Glendale, California store.

19. On or about December 3, 2021, Plaintiff participated in a video conference interview for the Store Director position in Glendale. She was not offered the position.

20. On or about December 17, 2021, Plaintiff received a telephone call from Defendant GORDON notifying her that then Mayor Bill De Blasio mandated a vaccination for all private companies' employees in New York, and if she did not become vaccinated by December 27, 2021,

Case 1:23-cv-04287-LAP    Document 1-1    Filed 05/23/23    Page 7 of 30

she must go on unpaid leave. Defendant advised that Plaintiff would need to notify HR if she was

going to file a leave claim or not. Plaintiff asked if she could use her personal days for the next two

days until December 28th to make a decision. Defendant mentioned these days would be unpaid and

cut into Defendant's vacation time. Plaintiff asked for clarity, "Are you saying if I choose not to get

the vaccine and have to be on leave that I'll be cutting into your vacation time?" Defendant

responded, "Yes, because then I have to come into work." Plaintiff was also instructed she had until

December 26th to email HR of her request if she were to make it.

21. On or about December 24, 2021, Defendant GORDON asked if Plaintiff filed a

leave claim yet, and she responded not yet as she had until the 26th to do so. Defendant responded

that she would "have to do it today, within the next 10 minutes." Plaintiff then went to her desk to

send the email to HR, and moments later, she received an email from Defendant asking her to

forward her the claim if she sent it to HR.  Plaintiff responded that it was meant to be private.

Defendant replied she can forward it to an HR Representative for the New York stores and the Vice

President of HR. Plaintiff never asked Defendant who she should send the request to.

22. During her employment, pain in one of Plaintiff's right foot became increasingly more

painful as she spent years working on her feet. She flew out to Los Angeles, California on December

29, 2021 to visit family. Her vacation was originally scheduled to be taken December 29, 2021 to

January 7, 2022. During this time, she contracted Covid-19 and quarantined. Once she tested negative,

she saw a physician to address her foot pain before flying back to New York. After taking x-rays in

Dr. Patrick Levine's office, he urged her to undergo immediate surgery. Plaintiff had a borderline

severe bunion on her right foot that gradually worsened over time from standing on her feet frequently

and had never requested any accommodations before for her foot condition. Based on her doctor's

diagnosis and recommendation, she scheduled the surgery on February 4, 2022 and provided

6

Defendant with two (2) weeks' prior notice of her medical leave, three (3) weeks prior notice of her scheduled surgery

23. On or about January 19, 2022, Defendant GORDON asked what Plaintiff's plans were concerning moving back to California. Plaintiff stated she still planned on remaining in New York. Defendant said, "Well I thought you were moving, and HR does too so now I have to tell them so they can plan that out."

24. In or about January, 2022, during her sick days, Plaintiff received at least two (2) emails from TCO corporate/HR asking for more clarification regarding her vaccine exemption. Defendant had already notified HR that Plaintiff had Covid-19 so they were aware she was out of the office recovering. Defendant telephoned her one morning once she got back to New York stating, "I have to respond to HR. They are talking about termination." On the following day, Plaintiff arrived to work at the Hudson Yards store and was asked by Defendant to come into her office to speak.

25. Plaintiff applied for disability benefits via Matrix, which is a third-party company Defendant T&C directs its employees to use to process medical leave requests or requests for accommodation on or about January 14, 2022, which were approved for approximately one (1) month but were subsequently denied the following month as updates from her doctors were required.

26. Defendant GORDON questioned Plaintiff about her accommodation asking, "What's your reason? Medical?" Plaintiff said it was private. During this same meeting, she was asked how much time she needed for her medical leave so she can schedule accordingly. Plaintiff replied 12 weeks.

27. Defendant GORDON expressed skepticism about the necessity of Plaintiff's recovery time length and accused her of having the surgery to extend her time off work, which upset Plaintiff.

28. During the end of January 2022, Plaintiff received a telephone call from Defendant

7

GORDON on her day off asking if she was aware that her leave was denied, which it actually was not. Matrix approved four weeks of leave at a time. When applying for her Matrix claim, Plaintiff had stated that she would need 12 weeks of time off work to recover as that is what her doctor advised and to attend physical therapy.

29. Plaintiff remained approved for four (4) weeks of leave while the following eight (8) weeks were in pending status awaiting documents from her doctor. These updates were sent to Plaintiff as well as to Defendant. During the telephone call, Defendant then asked Plaintiff specifically:

- "Was your surgery substantiated?";
- "You may not need 12 weeks for this type of surgery";
- "Even major surgeries usually need eight weeks of recovery";
- "I've had people that reported into me that had foot surgery, and they only needed a month off and then they were back at work in a boot";
- "Are you doing your surgery in California?";
- "How many times would you need to go to physical therapy?"; and
- "Physical therapy could be done one time a week."

30. Plaintiff did not file a complaint with Human Resources ("HR") at that time about Defendant GORDON's harassing and invasive comments.

31. Plaintiff began her medical leave on or about February 1, 2022, and underwent surgery on or about February 4, 2022, in California.

32. Despite Plaintiff feeling guilty about taking the time off work due to Defendant GORDON's comments, her doctor reassured her that her recovery time was necessary and valid.

33. On or about February 4, 2022, Plaintiff underwent the surgery and had subsequent doctor visits every three (3) to four (4) weeks for the next several months tracking her progress and healing. Matrix possessed routine updates if requested from her medical files and doctor's notes.

34. On or about February 5, 2022, she received a text message from Defendant GORDON hoping her surgery went well. Then on or about March 2, 2022, Defendant sent annual incentive information from her personal email and via text message. She then asked how Plaintiff was doing.

35. Plaintiff contacted Matrix every four weeks as was required by her employer and Matrix and avoided communicating with Defendant GORDON directly about her medical condition.

36. After the surgery, despite transitioning to a boot, Plaintiff continued to experience foot pain.

37. In or about March/April 2022, Plaintiff logged onto her work email and noticed there was a new Manager hired in the Hudson Yards store in New York. She was unsure if he was temporary or permanent hire. On or about April 25, 2022, she emailed Defendant EL-QAUOD that her doctor advised she would require additional time off from work to continue recovering.

38. In May 2022, Plaintiff's doctor submitted a note to her employer stating that she was released to return to work with breaks every 30 minutes, which based upon Plaintiff's foot's progress, was a mistake by the doctor. The doctor subsequently revised Plaintiff's restrictions to indicate that she was unable to return to work as of May 2022.

39. On or about May 7, 2022, Plaintiff logged onto her work email and saw an email from Defendant GORDON regarding her leave. She notified Defendant GORDON that she had already notified Defendant EL-QAOUD and Matrix two (2) weeks prior.

40. In or about July 2022, it was discovered that Plaintiff's foot was broken, and the screw had not fused. Plaintiff had not healed all the way yet.

41. Under the Family Medical Leave Act ("FMLA"), Plaintiff received payments until on or about May 2022. Defendant T&C paid Plaintiff from February 2022 to June 27, 2022 pursuant to the Income Protection Plan. Thereafter, Plaintiff used her vacation and sick pay.

43. On or about September 2022, Plaintiff had a telephone call with Defendant EL-QAOUD asking about options to extend her leave beyond the six (6) months given by New York State Short Term Disability ("STD"). Defendant EL-QAOUD informed her that she can apply for either time off of work or an accommodation under The Americans with Disabilities Act ("ADA"). She asked

Defendant if she should inform Defendant GORDON about this, and she advised her that Plaintiff should. She then went on to say that there had been times during 2022 when Defendant GORDON expected Plaintiff to return to work.

44. Plaintiff asked Matrix for a status update regarding her medical leave on or about September 15, 2022.

45. On or about September 26, 2022, Defendant EL-QAOUD mentioned to Plaintiff that Defendant GORDON was expecting her to be back at work on or about October 2, 2022.

46. Plaintiff spoke to Matrix, who gave her the ADA request form to be filled out by Plaintiff's doctor to provide leave for time period August 9, 2022 to December 30, 2022.

47. Plaintiff was given different answers by Matrix representatives regarding the status of her case, including conflicting information about whether she was denied or approved for leave.

48. Plaintiff's medical leave was extended until October 1, 2022, with a reassessment to be done before December 30, 2022.

49. On or about September 16, 2022, Plaintiff received a letter from Defendant EL-QAOUD stating that she could be accommodated until October 1, 2022, and that Plaintiff would be separated from the company if she did not return to work by October 2, 2022.

50. On or about September 22, 2022, Plaintiff spoke to Defendant EL-QAOUD, who confirmed that Plaintiff would be terminated if she did not return to work by October 2, 2022. However, Plaintiff was unable to return to work without any accommodation due to the state of her right foot.

51. On or about October 2, 2022, Plaintiff received a termination letter via email from Defendant GORDON stating that the company was unable to keep her position open, and she was therefore terminated.

10

Case 1:23-cv-04287-LAP   Document 1-1   Filed 05/23/23   Page 12 of 30

52. *Economic damages*: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career and lost wages, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

53. *Non-economic damages*: As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation and mental and physical pain and anguish, in a sum to be proven at trial.

54. *Punitive damages*: Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights such that punitive damages are warranted against Defendant.

55. *Attorneys' fees*: Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

56. *Mandatory service*: A copy of this Complaint was mailed on or around May_9, 2023 to the New York State Division of Human Rights, the New York State Department of Labor and the New York City Commission on Human Rights thereby satisfying the notice requirements of the New York State Human Rights Law and the New York City Human Rights Law.

## FIRST CAUSE OF ACTION
### Violation of New York State Human Rights Law for Disability Discrimination - Against All Defendants

57. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

58. The New York Executive Law §296(1)(a) provides that: "It shall be an unlawful discriminatory practice for an employer or licensed agency, because of the age, race, creed, color,

11

national origin, sexual orientation, military status, sex, disability, predisposing genetic

characteristics, marital status, or domestic violence victim status, to refuse or hire or employ or to

bar or to discharge from employment such individual in compensation or in terms, condition or

privileges of employment."

59. Defendants' conduct, as alleged, violated the New York State Human Rights Law,

including but not limited to, N.Y. Exec. Law § 296. Defendants committed unlawful employment

practices, including but not limited to, the following bases for liability:

- Taking adverse employment actions against Plaintiff such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's disability and/or other good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to engage Plaintiff in a good faith interactive process regarding her request for accommodation in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

- Harassing Plaintiff and/or creating a hostile work environment in whole or in part on the basis of Plaintiff's disability and/or good faith complaints in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law §296;

- Failing to take all reasonable steps to prevent discrimination, harassment and retaliation based on Plaintiff's disability and/or other good faith complaints, and/or other protected characteristic or activity in violation of the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296;

12

- Plaintiff's disability, and/or good faith complaints protected by the New York State Human Rights Law, including but not limited to, N.Y. Exec. Law § 296, were motivating factors in Defendants' decision to terminate Plaintiff's employment, not to retain, hire or otherwise employ Plaintiff in any position, and/or to take other adverse job actions against Plaintiff.

60. Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in her civil rights and/or to harassment.

61. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

62. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress and physical and mental pain and anguish, all to her damage in a sum according to proof.

63. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

<u>**SECOND CAUSE OF ACTION**</u>
**Violation of New York State Human Rights Law for Failure to Provide Reasonable Accommodation and Engage in Cooperative Dialogue - Against All Defendants**

64. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

65. The New York Executive Law §296(3)(a) provides that: "It shall be an unlawful discriminatory practice for an employer . . . to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee, prospective employee or

13

member in connection with a job or occupation sought or held or participation in a training

program."

66. Plaintiff's borderline severe bunion is a disability within the meaning of the New York

State Human Rights Law.

67. Plaintiff could perform the essential functions of her position at Defendant TIFFANY &

CO. as a Store Manager with the requested accommodation.

68. Defendants terminated Plaintiff while she was on medical leave, which she had provided

the proper medical documentation for.

69. Defendants' conduct, as alleged, violated the New York State Human Rights Law,

including but not limited to, N.Y. Exec. Law § 296(3)(a).

70. As a proximate result of Defendants' willful, knowing, and intentional failure to provide

reasonable accommodations, Plaintiff has sustained and continues to sustain substantial losses of

earnings and other employment benefits.

71. As a proximate result of Defendants' willful, knowing, and intentional failure to provide

reasonable accommodations, Plaintiff has suffered and continues to suffer humiliation, emotional

distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

72. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to

Plaintiff's protected rights, entitling Plaintiff to punitive damages against Defendants.

## THIRD CAUSE OF ACTION
**Violation of New York State Human Rights Law for Retaliation - Against All Defendants**

73. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein

by reference.

74. Defendants' conduct, as alleged, violated the New York State Human Rights Law,

specifically N.Y. Exec. Law sections 296(1)(e) and 296(7), and Defendants committed unlawful

14

employment practices, including by the following, separate bases for liability: retaliating against Plaintiff, including by assessing him attendance "points" for missing shifts due to his disability and refusing to correct a computer error with his work schedule that erroneously assigned him attendance points, and ultimately terminating his employment for seeking to exercise rights guaranteed under the New York State Human Rights Law and/or for opposing Defendants' failure to provide such rights, including the right to be free from discrimination and harassment based on disability, and the right to engage in the interactive process, in violation of New York State Human Rights Law section §§ s 296(1)(e) and 296(7).

75. Plaintiff engaged in the protected activity under the NYSHRL of opposing Defendants' failure to provide reasonable accommodation for her disability and FMLA, specifically by harassing her while on leave and recovering from surgery, failing to engage in a cooperative dialogue to agree on a reasonable accommodation to work as a Manager for the New York store due to her inability to stand on her feet for prolonged periods of time, ignoring her medical documentation properly provided to Matrix in support of her condition and leave and terminating her while on medical leave.

76. As a proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

77. As a proximate result of Defendants' willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

78. Defendants' conduct constitutes malicious, willful, wanton and/or reckless indifference to Plaintiff protected rights, entitling Plaintiff to compensatory damages against Defendants.

15

## FOURTH CAUSE OF ACTION

**Violation of the New York State Human Rights Law for Hostile Work Environment — Against
All Defendants**

79. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated
herein by reference.

80. The New York State Human Rights Law prohibits employers from creating a hostile
work environment arising from discrimination based on a Plaintiff's membership in a protected
class.

81. Defendants' conduct, as alleged, violated the New York State Human Rights Law,
including N.Y. Exec. Law section 296. Plaintiff was subjected to a hostile work environment
because of her disability and complaints.

82. By the aforementioned acts, Defendants discriminated against Plaintiff, by creating and
maintaining discriminatory working conditions, refusing requests for reasonable accommodation and
otherwise discriminating against Plaintiff because of her disability.

83. But for Plaintiff's disability, accommodation, FMLA and ADA requests and complaints
opposing discrimination and harassment, she would not have been discriminated against, harassed
and probed concerning her medical condition and surgery by her direct supervisor, her direct
supervisor minimized her disability and she was ultimately terminated.

84. Defendants' acts and omissions constitute unlawful and willful discrimination against
Plaintiff based on her disability and complaints of harassment in violation of the NYSHRL.

85. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses,
benefits, promotional opportunities and other prerequisites of employment.

16

FILED: NEW YORK COUNTY CLERK 05/09/2023 04:26 PM

86. As a direct and proximate result of Defendants' harassment, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

<b><u>FIFTH CAUSE OF ACTION</u></b>
<b>Violation of the New York City Human Rights Law For Disability Discrimination – Against All Defendants</b>

87. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

88. The New York City Administrative Code §8-107(1)(a) provides that, "It shall be an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

89. Plaintiff suffered from a disability during the time she was employed by Defendants.

90. Disability is defined by §8-102 of the New York City Administrative Code as "any physical, medical, mental or psychological impairment, or a history or record of such impairment." Here, Plaintiff suffered from a bunion that impaired her mobility and required ongoing medical treatment.

91. Defendants' conduct, as alleged, violated the New York City Human Rights Law, including §8-107 of the New York City Administrative Code. Defendants committed unlawful employment practices, including the following bases for liability:

- Plaintiff, because of her disabilities, need for disability leave, need for reasonable accommodations, and need to engage in a good faith cooperative dialogue, is a member

17

of a protected group; Plaintiff was qualified to hold her position; despite her qualifications, she was terminated because of her disability, need to take disability leave, and request for accommodation; and the adverse employment action was taken under circumstances giving rise to an inference of discrimination in violation of § 8-107 of the New York City Administrative Code.

- Defendants, motivated by a discriminatory animus discharged Plaintiff in terms of conditions of employment because of Plaintiff's individual disabilities, her need for disability leave, her need for reasonable accommodations, and her need to engage in the interactive process in violation of §§ 8-107(1) and 8-107(15) of the New York City Administrative Code.

- Defendants discriminated against Plaintiff for her disabilities and for Plaintiff requesting accommodations from her employers. Plaintiff believes and on that basis alleges that her disabilities and the need to accommodate her disabilities were substantial motivating factors in Defendants' termination of her employment.

92. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

93. As a proximate result of Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

94. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

18

95. As a direct and proximate result of Defendants' harassment, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SIXTH CAUSE OF ACTION
### Violation of the New York City Human Rights Law For Hostile Work Environment — Against All Defendants

96. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

97. Defendants' persistent, frequent and pervasive conduct created an atmosphere that was hostile, abusive, humiliating and degrading to Plaintiff as an individual with a bunion who required surgery and physical therapy.

98. Defendants subjected Plaintiff to a hostile work environment permeated with harassment based on disability sufficiently severe and pervasive to alter the conditions of Plaintiff's employment in violation of NYCHRL.

99. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

100. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation and career.

## SEVENTH CAUSE OF ACTION
### Violation of New York City Human Rights Law For Retaliation — Against All Defendants

101. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

19

102. New York City Administrative Code §8-107(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has opposed any practice forbidden under this chapter."

103. Plaintiff made multiple complaints and experienced adverse employment actions as a result including, but not limited to, the following: Threat of termination if Plaintiff did not return to work by October 2, 2022, despite her medical condition and restrictions, Plaintiff's termination after informing her employer about the need for surgery and recovery time. Such conduct is demonstrative of Defendants' reckless indifference to the laws prohibiting discrimination.

104. By the acts and practices described above, Defendants retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

105. By the above-described unlawful conduct, the individually named Defendants, in their individual and official capacity, retaliated against Plaintiff for engaging in protected activities in violation of the NYCHRL.

106. As a proximate result of the foregoing, Plaintiff has sustained loss of wages, bonuses, benefits, promotional opportunities and other prerequisites of employment.

107. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has and is now suffering irreparable injury and monetary damages, including, without limitation, emotional distress and pain and suffering, humiliation and damage to reputation.

## EIGHTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress Under New York Common Law

108. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference

20

109. Defendants' discriminatory, harassing and retaliatory actions against Plaintiff constituted extreme and outrageous misconduct and caused Plaintiff extreme emotional distress.

110. Defendants were aware that treating Plaintiff in the manner alleged above, including depriving Plaintiff of her livelihood, would devastate Plaintiff and cause her extreme hardship. .

111. As a proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

112. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling Plaintiff to punitive damages against Defendants.

### NINTH CAUSE OF ACTION
**Violation of New York City Human Rights Law For Aiding, Abetting, Inciting, Compelling and/or Coercing Forbidden Acts — Against Defendants GORDON and EL-QAOUD**

113. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

114. The New York City Administrative Code §8-107(6) provides that, "It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

115. Defendants GORDON's and EL-QAOUD's conduct, as alleged, violated the New York State Human Rights Law, §8-107(6) of the New York City Administrative Code and the individual Defendants committed unlawful employment practices, including by the following, separate bases for liability:

- Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of disability, need for disability leave,

21

need for accommodation, and need to engage in the interactive process, in violation of the New York City Human Rights Law; and

- Aiding, abetting, inciting and/or coercing the acts forbidden in this article. Specifically, the individual Defendants were involved or allowed/encouraged the discrimination based on disability, need for disability leave, need for accommodation, and need to engage in the interactive process, and retaliation against plaintiff in violation of §8-107(6) of the New York City Administrative Code.

116. As a proximate result of the individual Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

117. As a proximate result of the individual Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

118. As a proximate result of the individual Defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. The individual Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against the individual Defendants.

**TENTH CAUSE OF ACTION**

22

Case 1:23-cv-04287-LAP   Document 1-1   Filed 05/23/23   Page 24 of 30

**Violation of New York State Human Rights Law For Aiding, Abetting, Inciting, Compelling and/or Coercing Forbidden Acts — Against Defendants GORDON and EL-QAOUD**

121. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

122. New York State Executive Law §296(6) provides that, "It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

123. Defendants GORDON's and EL-QAOUD's conduct, as alleged, violated the New York State Human Rights Law, specifically N.Y. Exec. Law § 296(6) and the individual Defendants committed unlawful employment practices, including by the following, separate bases for liability:

- Taking adverse employment actions against Plaintiff, such as discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against Plaintiff, in whole or in part on the basis of Plaintiff's disability, need for disability leave, need for reasonable accommodation and need to engage in the interactive process, in violation of the New York State Human Rights Law; and

- Aiding, abetting, inciting and/or coercing the acts forbidden in this article. Specifically, the individual Defendant was involved or allowed/encouraged the discrimination based on disability, need for disability leave, need for reasonable accommodation, and need to engage in the interactive process and retaliation against Plaintiff in violation of N.Y. Exec. Law §296(6).

124. The individual Defendants' conduct, as alleged, violated the New York Civil Rights Law, including but not limited to, N.Y. Civ. Rights § 40-c by subjecting Plaintiff to discrimination in her civil rights and/or to harassment.

125. As a proximate result of the individual Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

126. As a proximate result of the individual Defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

127. As a proximate result of the individual Defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

128. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

129. The individual Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against the individual Defendants.

### ELEVENTH CAUSE OF ACTION
**Employer Liability for Discriminatory Conduct by Employees under New York City Human Rights Law - Against Defendant TIFFANY & CO.**

130. The allegations set forth in the foregoing paragraphs are re-alleged and incorporated herein by reference.

131. The New York City Administrative Code §8-107(13) provides that, "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent, which is in violation of any provision of this section other than subdivisions one and two of this section."

24

132. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

> (1) the employee or agent exercised managerial or supervisory responsibility; or

> (2) the employer knew of the employee's or agents discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

133. Defendant T&C is liable for an unlawful discriminatory employment practice of the individual Defendants including for the following, separate bases for liability: refusing to provide reasonable accommodation, harassing Plaintiff to shorten her recovery time after undergoing surgery, discriminating against Plaintiff because of disability, need for disability leave, need for reasonable accommodation and ultimately terminating Plaintiff's employment in violation of § 8-107(13) of the New York City Administrative Code.

134. Defendant T&C is further liable for an unlawful discriminatory employment practice of the individual Defendants who exercised managerial and supervisory responsibilities over Plaintiff.

135. Defendant T&C knew or should have known but acquiesced in discriminatory employment conduct of the individual Defendants.

25

136. Defendant T&C failed to exercise reasonable diligence to prevent said discriminatory conduct of the individual Defendants against Plaintiff.

137. As a proximate result of Defendants' willful, knowing, and intentional retaliation (which was committed with discriminatory intent) against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

138. As a proximate result of Defendants' willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to her damage in a sum according to proof.

139. As a proximate result of Defendants' creation of a hostile work environment based on discrimination that harmed Plaintiff, Plaintiff is entitled to compensatory damages.

140. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

141. Defendants' conduct constitutes malicious, willful, wanton, and/or reckless indifference to Plaintiff's protected rights, and this entitles Plaintiff to punitive damages against Defendants.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff NARE OGANESYAN respectfully requests that this Court grant judgment against Defendants, in an amount exceeding the jurisdictional limit of all lower courts of the State of New York as follows:

    a.  For general and special damages according to proof;

    b.  For exemplary damages, according to proof;

    c.  For pre-judgment and post-judgment interest on all damages awarded;

    d.  For reasonable attorneys' fees;

26

e.  For costs of suit incurred;

f.  For declaratory relief;

g.  For an award of punitive damages in an amount to be determined at trial;

h.  For an award of pre-judgment interest on all amounts due; and

i.  For such other and further relief as the Court may deem just and proper.

Dated: May 9, 2023                          SHEGERIAN & ASSOCIATES

By: _____*Olivia Clancy*_____
Olivia M. Clancy, Esq.
90 Broad Street, Suite 804
New York, New York 10004
Tel.: (212) 257-8883
Fax: (212) 804-7299
oclancy@shegerianlaw.com
*Attorneys for Plaintiff*
**NARE OGANESYAN**

27

UCS-840
(rev. 02/01/2022)

# REQUEST FOR JUDICIAL INTERVENTION

## Supreme COURT, COUNTY OF New York



Index No: _____    Date Index Issued: _____

| | **For Court Use Only:** |
|---|---|

| **CAPTION** | Enter the complete case caption. Do not use et al or et ano. If more space is needed, attach a caption rider sheet. | **IAS Entry Date** |
|---|---|---|

Nare Oganesyan

**Judge Assigned**

Plaintiff(s)/Petitioner(s)

-against-

**RJI Filed Date**

Tiffany & Company, Marie Gordon, Natalie El-Qaoud

Defendant(s)/Respondent(s)

## NATURE OF ACTION OR PROCEEDING:   Check only one box and specify where indicated.

**COMMERCIAL**
- ☐ Business Entity (includes corporations, partnerships, LLCs, LLPs, etc.)
- ☐ Contract
- ☐ Insurance (where insurance company is a party, except arbitration)
- ☐ UCC (includes sales and negotiable instruments)
- ☐ Other Commercial *(specify):* _____

*NOTE: For Commercial Division assignment requests pursuant to 22 NYCRR 202.70(d), complete and attach the **COMMERCIAL DIVISION RJI ADDENDUM (UCS-840C)**.*

**TORTS**
- ☐ Adult Survivors Act
- ☐ Asbestos
- ☐ Environmental *(specify):* _____
- ☐ Medical, Dental or Podiatric Malpractice
- ☐ Motor Vehicle
- ☐ Products Liability *(specify):* _____
- ☐ Other Negligence *(specify):* _____
- ☐ Other Professional Malpractice *(specify):* _____
- ☒ Other Tort *(specify):* Employment Discrimination

**SPECIAL PROCEEDINGS**
- ☐ Child-Parent Security Act *(specify):* ☐ Assisted Reproduction ☐ Surrogacy Agreement
- ☐ CPLR Article 75 - Arbitration    [see ***NOTE*** in **COMMERCIAL** section]
- ☐ CPLR Article 78 - Proceeding against a Body or Officer
- ☐ Election Law
- ☐ Extreme Risk Protection Order
- ☐ MHL Article 9.60 - Kendra's Law
- ☐ MHL Article 10 - Sex Offender Confinement *(specify):*    ☐ Initial    ☐ Review
- ☐ MHL Article 81 (Guardianship)
- ☐ Other Mental Hygiene *(specify):* _____
- ☐ Other Special Proceeding *(specify):* _____

**MATRIMONIAL**
- ☐ Contested

   **NOTE:** If there are children under the age of 18, complete and attach the **MATRIMONIAL RJI Addendum (UCS-840M)**.

   *For Uncontested Matrimonial actions, use the Uncontested Divorce RJI (**UD-13**).*

**REAL PROPERTY** Specify how many properties the application includes: _____
- ☐ Condemnation
- ☐ Mortgage Foreclosure *(specify):* ☐ Residential    ☐ Commercial
   Property Address: _____

   **NOTE:** For Mortgage Foreclosure actions involving a one to four-family, owner-occupied residential property or owner-occupied condominium, complete and attach the **FORECLOSURE RJI ADDENDUM (UCS-840F)**.
- ☐ Partition
   **NOTE:** Complete and attach the **PARTITION RJI ADDENDUM (UCS-840P)**.
- ☐ Tax Certiorari *(specify):*   Section: _____ Block: _____ Lot: _____
- ☐ Tax Foreclosure
- ☐ Other Real Property *(specify):* _____

**OTHER MATTERS**
- ☐ Certificate of Incorporation/Dissolution   [see ***NOTE*** in **COMMERCIAL** section]
- ☐ Emergency Medical Treatment
- ☐ Habeas Corpus
- ☐ Local Court Appeal
- ☐ Mechanic's Lien
- ☐ Name Change/Sex Designation Change
- ☐ Pistol Permit Revocation Hearing
- ☐ Sale or Finance of Religious/Not-for-Profit Property
- ☐ Other *(specify):* _____

## STATUS OF ACTION OR PROCEEDING   Answer YES or NO for every question and enter additional information where indicated.

| | YES | NO | |
|---|:---:|:---:|---|
| Has a summons and complaint or summons with notice been filed? | ☐ | ☒ | If yes, date filed: _____ |
| Has a summons and complaint or summons with notice been served? | ☐ | ☒ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ☐ | ☒ | If yes, judgment date: _____ |

## NATURE OF JUDICIAL INTERVENTION   Check one box only and enter additional information where indicated.

- ☐ Infant's Compromise
- ☐ Extreme Risk Protection Order Application
- ☐ Note of Issue/Certificate of Readiness
- ☐ Notice of Medical, Dental or Podiatric Malpractice   Date Issue Joined: _____
- ☐ Notice of Motion   Relief Requested: _____   Return Date: _____
- ☐ Notice of Petition   Relief Requested: _____   Return Date: _____
- ☐ Order to Show Cause   Relief Requested: _____   Return Date: _____
- ☐ Other Ex Parte Application   Relief Requested: _____
- ☐ Partition Settlement Conference
- ☐ Poor Person Application
- ☒ Request for Preliminary Conference
- ☐ Residential Mortgage Foreclosure Settlement Conference
- ☐ Writ of Habeas Corpus
- ☐ Other *(specify):* _____

Case 1:23-cv-04287-LAP   Document 1-1   Filed 05/23/23   Page 30 of 30

## RELATED CASES

List any related actions. For Matrimonial cases, list any related criminal or Family Court cases. If none, leave blank.
If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Case Title | Index/Case Number | Court | Judge (if assigned) | Relationship to instant case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## PARTIES

For parties without an attorney, check the "Un-Rep" box and enter the party's address, phone number and email in the space provided. If additional space is required, complete and attach the **RJI Addendum (UCS-840A)**.

| Un-Rep | Parties<br>List parties in same order as listed in the caption and indicate roles (e.g., plaintiff, defendant, 3rd party plaintiff, etc.) | Attorneys and Unrepresented Litigants<br>For represented parties, provide attorney's name, firm name, address, phone and email. For unrepresented parties, provide party's address, phone and email. | Issue Joined<br>For each defendant, indicate if issue has been joined. | Insurance Carriers<br>For each defendant, indicate insurance carrier, if applicable. |
|---|---|---|---|---|
| ☐ | Name: Oganesyan, Nare<br><br>Role(s): Plaintiff/Petitioner | OLIVIA CLANCY, SHEGERIAN & ASSOCIATES, 90 BROAD ST STE 804 , NEW YORK, NY  10004, oclancy@shegerianlaw.com | ☐ YES  ☒ NO |  |
| ☐ | Name: Tiffany & Company<br><br>Role(s): Defendant/Respondent | Michael Thompson, Tiffany & Company , 51 Sylvan Way , Parsippany , NJ  07054, (973) 254-8435, Michael.Thompson@tiffany.com | ☐ YES  ☒ NO |  |
| ☐ | Name: Gordon, Marie<br><br>Role(s): Defendant/Respondent | Michael Thompson, Tiffany & Company, 51 Sylvan Way, Parsippany, NJ  07054, (973) 254-8435, Michael.Thompson@tiffany.com | ☐ YES  ☒ NO |  |
| ☐ | Name: El-Qaoud, Natalie<br><br>Role(s): Defendant/Respondent | Michael Thompson, Tiffany & Company , 51 Sylvan Way, Parsippany, NJ  07054, (973) 254-8435, Michael.Thompson@tiffany.com | ☐ YES  ☒ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |
| ☐ | Name:<br><br>Role(s): | | ☐ YES  ☐ NO |  |

**I AFFIRM UNDER THE PENALTY OF PERJURY THAT, UPON INFORMATION AND BELIEF, THERE ARE NO OTHER  RELATED ACTIONS OR PROCEEDINGS, EXCEPT AS NOTED ABOVE, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION BEEN PREVIOUSLY FILED IN THIS ACTION OR PROCEEDING.**

Dated:  05/09/2023

OLIVIA MARIE CLANCY
Signature

5567219
Attorney Registration Number

OLIVIA MARIE CLANCY
Print Name

*This form was generated by NYSCEF*