UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NARE OGANESYAN,

                Plaintiff,

-against-

TIFFANY AND COMPANY, et al.,

                Defendants.

23-CV-4287 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

      Plaintiff Nare Oganesyan ("Plaintiff") alleges disability discrimination, failure to accommodate, failure to engage in cooperative dialogue, failure to provide reasonable accommodations, hostile work environment, retaliation and aiding and abetting, resulting in her wrongful termination, under the New York State Human Rights Law, New York City Human Rights Law and common law. ECF No. 1-1 ("Compl."). Defendants Tiffany and Company ("Tiffany & Co."), Marie Gordon and Natalie El-Qaoud (collectively, "Defendants") seek to compel arbitration and stay the instant action, pursuant to the Federal Arbitration Act ("FAA") and additionally move for attorneys' fees. ECF No. 6. For the reasons stated herein, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Plaintiff's Allegations

      Plaintiff was employed by Tiffany & Co. from 2014 through 2022, holding the positions of Sales Professional, Operations Coordinator, Assistant Store Manager and Store Manager. Compl. ¶¶ 12–13. In Plaintiff's position as Store Manager, Plaintiff's direct boss was Defendant Gordon. *Id.* ¶ 14.

On or about December 17, 2021, Plaintiff received a call from Defendant Gordon notifying her that vaccination for COVID-19 was mandatory for all private companies' employees in New York and that Plaintiff would need to be vaccinated by December 27, 2021. *Id*. ¶ 20. Plaintiff asked to use two personal days while she made a decision, until her scheduled vacation from December 29, 2021 to January 7, 2022. *Id*. ¶ 20, 22. During that period, Plaintiff contracted COVID-19. *Id*. ¶ 22. Also during that period, Plaintiff received at least two emails from Defendants asking for clarification regarding her vaccine exemption. *Id*. ¶ 24.

After Plaintiff tested negative for COVID-19, she visited a doctor regarding a borderline severe bunion on her right foot. *Id*. ¶ 22. The doctor recommended surgery, which Plaintiff scheduled for February 4, 2022. *Id*.

On or about January 14, 2022, Plaintiff applied for disability benefits through Matrix, a third-party company used by Tiffany & Co. *Id*. ¶ 25. Defendant Gordon asked Plaintiff about her request and expressed skepticism about the necessity of Plaintiff's recovery time, which Plaintiff found to be harassing and invasive. *Id*. ¶ 26–30.

In May 2022, Plaintiff's doctor sent a note to Plaintiff's employer stating that Plaintiff was able to return to work with breaks every 30 minutes. *Id*. ¶ 38. The doctor later revised the note to indicate that Plaintiff was unable to return to work. *Id*. In September 2022, Plaintiff spoke with Defendant El-Qaoud regarding Plaintiff's options to extend her leave beyond the six months given by New York State Short Term Disability. *Id*. ¶ 43. Thereafter, Plaintiff received a letter from Defendant El-Qaoud stating that Plaintiff could be accommodated until October 1, 2022 and that Plaintiff would be terminated if she did not return to work by October 2, 2022. *Id*. ¶ 49–50. Plaintiff was unable to return to work, and so received a termination letter on October 2, 2022. *Id*. ¶ 50–51.

## II. The Arbitration Agreement

Plaintiff and Tiffany & Co. entered into a Dispute Resolution Agreement (the "Agreement") as a condition of Plaintiff's employment with Tiffany & Co. The Agreement provides that:

> This Agreement requires arbitration of legal disputes on a non-class, non-collective, and non-representative basis between you and the Company, or its present and former affiliates, parents, predecessors, successors, officers, directors, employees, and agents arising out of or relating to your employment or the termination of employment.

ECF No. 8-1 at 1. The Agreement further provides that disputes covered by the Agreement "include disputes arising out of or relating to the interpretation or application of this Agreement, except as otherwise addressed herein." *Id*. at 2. Continuing employment for 14 days after being provided with the Agreement constitutes mutual acceptance of the terms of the Agreement. *Id*. at 1, 5. The Agreement is governed by the FAA and states that it "evidences a transaction involving commerce." *Id*. at 1.

## III. Procedural History

Plaintiff filed her Complaint in New York County Supreme Court on May 9, 2023. Compl. Defendants removed this case to federal court on May 23, 2023, citing diversity jurisdiction. ECF No. 1. On June 13, 2023, Defendants moved to compel arbitration and stay the action. ECF No. 6.

Plaintiff's opposition to Defendants' motion to compel arbitration was due on June 27, 2023, but was not filed. On July 17, 2023, the Court ordered Defendants to serve their motion to compel arbitration on Plaintiff by July 21, 2023 and Plaintiff to respond within five days of service as to why Plaintiff did not file an opposition to the motion. ECF No. 10. Plaintiff filed a letter with the Court on July 27, 2023, laying out Plaintiff's arguments and requesting the Court

3

"consider her arguments herein." ECF No. 13 ("Pl. Let."). Although untimely, the Court will consider Plaintiff's arguments in deciding this motion.

## LEGAL STANDARD

The FAA "reflects a liberal federal policy favoring arbitration agreements and places arbitration agreements on the same footing as other contracts." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73 (2d Cir. 2017) (cleaned up). Under Section 2, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 provides that parties can petition a district court for an order compelling arbitration. 9 U.S.C. § 4. The role of the courts is "limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate." *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (quoting *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996)). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25–26 (1983). Federal courts "apply ordinary state-law principles that govern the formation of contracts" in determining whether a valid agreement to arbitrate exists. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

In considering a motion to compel arbitration, "courts apply a standard similar to that applicable for a motion for summary judgment," deciding whether there is an issue of fact as to the making of the agreement based on "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (cleaned up). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are

unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). It may not satisfy this burden through "general denials of the facts on which the right to arbitration depends . . . but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## DISCUSSION

Defendants move, pursuant to the FAA, 9 U.S.C. § 1 *et seq.*, to compel arbitration. Plaintiff opposes on the bases that: (1) the Agreement's delegation of authority to the arbitrator to decide whether the agreement is enforceable and valid is unconscionable; (2) the Agreement is not valid and enforceable because the entirety of the Agreement was not displayed and known to Plaintiff at the time she signed the document; and (3) Tiffany & Co. placed Plaintiff under duress at the time of signing because Plaintiff would be unable to continue working for Tiffany & Co. if she did not acquiesce to the Agreement. These arguments are governed by state law. *See Nicosia*, 834 F.3d at 229; *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

The Agreement does not contain a choice-of-law provision and the parties did not brief which state's law should govern the Court's analysis of its provisions. California or New York law could apply, as the Agreement was executed in California and Plaintiff worked for Tiffany & Co. in both California and New York. Plaintiff is a citizen of California and Defendants are citizens of New York. Importantly, Plaintiff filed the case in New York County Supreme Court and Defendants cite to New York law in the briefing on this motion. Plaintiff does not dispute that New York law applies. Thus, the Court will apply New York law to the case. *See Tehran-Berkeley Civ. & Env't Engineers v. Tippetts-Abbett-McCarthy-Stratton*, 888 F.2d 239, 242 (2d Cir. 1989) (noting the "principle that implied consent to use a forum's law is sufficient to establish choice of law").

I.  **Motion to Compel Arbitration**

In looking to whether parties agreed to arbitrate, courts "look to state contract law principles." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) (quoting *Nicosia*, 834 F.3d at 229) (internal quotation marks omitted). The terms of an agreement provide the best evidence of what the parties intend, and "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). "[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Doctor's Assocs., Inc.*, 517 U.S. at 687.

A.  **Clear and Unmistakable Evidence of Intent to Delegate Arbitrability**

The Court finds that there is clear and unmistakable evidence in the Agreement that the parties intended to submit the question of arbitrability to the arbitrator. The Agreement states that, with express exceptions, disputes covered by the Agreement "include disputes arising out of or relating to the interpretation or application of this Agreement." Courts have consistently found that such language clearly and unmistakably demonstrates the parties' intent to delegate the gateway question of arbitrability. *O'Callaghan v. Uber Corp. of California*, No. 17-CV-2094 (ER), 2018 WL 3302179, at *8 (S.D.N.Y. July 5, 2018) (collecting cases).

Plaintiff argues that this delegation clause is unconscionable. Where a court finds clear and unmistakable evidence that contractual parties agreed to arbitrate arbitrability, a party may nonetheless challenge the delegation of arbitrability itself as invalid for unconscionability. *See Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010) (explaining that gateway questions of arbitrability may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract"). Under New York law, a delegation clause is unconscionable

only if it is "both procedurally and substantively unconscionable." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010); *O'Callaghan*, 2018 WL 3302179, at *9. "The procedural element of unconscionability concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract, per se." *Ragone*, 595 F.3d at 121–22 (quoting *State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (N.Y. 1983)).

Plaintiff argues that the Agreement is procedurally unconscionable: that she was not aware of the full meaning and impact of the Agreement. Even if the Court were to assume this is true,[1] under New York law, a person "who signs or accepts a written contract is conclusively presumed to know its contents and assent to them." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (cleaned up); *see also Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 350 (S.D.N.Y. 2019) ("[I]t is settled New York law that a party will not be excused from [her] failure to read and understand the contents of a document.") (internal citation and quotation marks omitted). Plaintiff does not dispute that she acknowledged receipt of the Agreement and that she assented to the Agreement by continuing her employment with Tiffany & Co. after the 14-day period set forth by the Agreement's express terms.

Plaintiff also argues that the Agreement is substantively unconscionable, as it "aimed to effectively deprive her of a jury trial adjudicating any arising employment claims." Pl. Let. at 1. An agreement is substantively unconscionable if it "is so grossly unreasonable as to be unenforceable according to its literal terms" and those contract terms are unreasonably favorable to the party seeking to enforce the contract. *Lawrence v. Miller*, 901 N.E.2d 1268, 1271 (N.Y. 2008) (internal citation and quotation marks omitted). "When both an employer and its

---

[1] Plaintiff does not submit a declaration or other evidence showing that she was not aware of the meaning and full impact of the arbitration agreement, as she was required to do. *See, e.g., Oppenheimer*, 56 F.3d at 358; *Guerriero v. Sony Elecs. Inc.*, No. 21-CV-2618 (VB), 2022 WL 736428, at *3 (S.D.N.Y. Mar. 11, 2022) ("rhetorical questions posed by plaintiff's counsel in his opposition brief" insufficient to defeat a motion to compel arbitration).

employees are bound to an agreement to arbitrate, when the terms of the agreement are equally applicable to both parties, and when the employer bears any unreasonable cost of the arbitration, the arbitration agreement is not unreasonably favorable to the employer." *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013). Here, both Plaintiff and Tiffany & Co. are bound to the Agreement, the terms of the Agreement are equally applicable to both parties and Tiffany & Co. will pay the arbitrator's and arbitration fees.

Accordingly, the Court concludes that the delegation clause is not procedurally or substantively unconscionable and thus may be enforced.

### B. The Agreement Is Valid and Enforceable

Plaintiff additionally argues that the Agreement is not valid and enforceable because (1) the entirety of the Agreement was not displayed and known to Plaintiff at the time she signed the document and (2) she was under duress at the time of signing as she would not be able to continue working at Tiffany & Co. if she did not sign the Agreement.

As discussed *supra* section I(A), under generally accepted principles of contract law, "in the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract is conclusively presumed to know its contents and to assent to them," *Gold*, 365 F.3d at 149 (cleaned up). Even if Plaintiff "did not understand the form or had questions about the arbitration clause or the rules . . . the burden was upon [her] to have [her] concerns addressed before signing." *Id*. Although it may be troubling that Plaintiff did not know the entirety of the Agreement at the time she signed it, it was her responsibility to ensure she understood the document she signed. *See Badinelli v. Tuxedo Club*, 183 F. Supp. 3d 450, 456 (S.D.N.Y. 2016); *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 334–35 (S.D.N.Y. 2014) (finding that there were insufficient allegations of duress where an employee failed to

8

sufficiently allege that she was under duress when she voluntarily completed an employment agreement).

Alternatively, Plaintiff contends that because signing the Agreement was a condition of her employment, the Agreement was made under duress. To establish duress or coercion plaintiff must show: "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989). Here, Plaintiff alleges that she was under duress because she "would be unable to continue working for the company if she did not agree to its proffered terms." But the FAA "does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone*, 595 F.3d at 121. "Courts have repeatedly held that requiring an employee to sign an arbitration clause as a condition of employment does not constitute economic duress, despite the imbalance in bargaining power." *Abreu v. Fairway Mkt. LLC*, No. 17-CV-9532 (VEC), 2018 WL 3579107, at *2 (S.D.N.Y. July 24, 2018); *see also Williams v. Parkell Prods., Inc.*, 91 Fed.Appx. 707, 708–09 (2d Cir. 2003).

Moreover, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (quoting *DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 633–34 (2d Cir. 1982), *cert. denied*, 461 U.S. 915 (1983)). Plaintiff signed the agreement in February 2017, but continued working at Tiffany & Co. until October 2022. Plaintiff does not claim that she repudiated the Agreement at any point during this period and so has waived her right to do so. *See id.* at 123 (noting that "[d]elays as shorts as six months have been held to constitute forfeiture of the claim" of economic duress); *Molina*, 363 F. Supp. 3d at 352 (holding

9

that the doctrine of economic distress did not release plaintiff from the binding effect of the agreement when she did not repudiate the agreement for two years).

## II. The Motion to Stay Is Granted

Defendant has requested a stay of the action. Section 3 of the FAA provides that "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (The FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested."). The Court will therefore stay this action pending arbitration.

## III. Attorneys' Fees

Defendants also request that the Court require Plaintiff to reimburse Defendants for the reasonable attorneys' fees and costs for having to file the instant motion. "A court may, pursuant to its inherent equitable powers, assess attorneys' fees and costs when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338*, 118 F.3d 892, 898 (2d Cir. 1997) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). Defendants make only a cursory request for fees and they do not demonstrate that Plaintiff acted in bad faith. As such, the motion for attorneys' fees is denied.

## CONCLUSION

For the reasons stated above, the motion to compel arbitration and the motion to stay are GRANTED. The motion for attorneys' fees and costs is DENIED. The Clerk of Court is respectfully directed to terminate ECF No. 6 and to stay this matter pending arbitration. The

parties shall report to the Court within seven days of the conclusion of the arbitration and shall at that time show cause why this case should not be dismissed.

Dated: November 16, 2023
       New York, New York

SO ORDERED.

*Jessica Clarke*

JESSICA G. L. CLARKE
United States District Judge